UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

NARLIN H. LEWIS,                    )
                                    )
            Plaintiff,              )
                                    )        No. 1:09-CV-52
v.                                  )
                                    )        Collier / Lee
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
            Defendant.              )

## REPORT AND RECOMMENDATION

This action was brought by Plaintiff Narlin Lewis ("Plaintiff") pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social

Security ("Commissioner" or "Defendant") denying Plaintiff social security disability ("SSD")

benefits. Plaintiff has filed a motion for judgment on the pleadings [Doc. 11], and Defendant has

filed a motion for summary judgment in response [Doc. 15]. Plaintiff seeks the award of benefits,

or in the alternative, a remand to the Commissioner to consider new evidence.

For the reasons stated below, I **RECOMMEND**: (1) Plaintiff's motion for judgment on the

pleadings [Doc. 11] be **DENIED**; (2) Defendant's motion for summary judgment [Doc. 15] be

**GRANTED**; (3) the decision of Commissioner be **AFFIRMED**; and (4) this action be **DISMISSED**

**WITH PREJUDICE**.

## I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff filed for SSD benefits alleging disability from seizures, hyper vascular disease, and

a pacemaker since February 3, 2006 (Tr. 68, 74, 649). His claim was initially disapproved on July 18, 2006, based on the Commissioner's conclusion that although he had undergone heart surgery, Plaintiff had "the ability to perform many normal activities" and his seizure disorder was "controlled with medication and proper treatment." (Tr. 62, 66). Plaintiff requested reconsideration of the initial decision, claiming he suffered from seizures, arrhythmia, and depression (Tr. 57), but was again disapproved for SSD benefits on April 18, 2007 (Tr. 55). Plaintiff requested a hearing, alleging he was severely impaired by diabetes, hypertension, seizure disorder, and severe migraine headaches (Tr. 124). The hearing was held before an administrative law judge ("ALJ") on February 5, 2008 (Tr. 688-704), and an unfavorable decision was issued on June 9, 2008 (Tr. 14-29). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review (Tr. 5).

## II.     ELIGIBILITY FOR DISABILITY BENEFITS

The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v).

> At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work: unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the

2

claimant is capable of performing other jobs existing in significant
numbers in the national economy.

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citations omitted).  If at any step in the sequential

process the SSA definitively determines the claimant either is or is not disabled, the process ends.

*Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

## III.    FACTUAL BACKGROUND AND ALJ'S FINDINGS

Plaintiff was 40 years old on the date his alleged disability began (Tr. 68).  He graduated

from high school and attended a year of college, and he completed truck driving school (Tr. 79).

He served in the United States Army as a computer programmer, as an "over the road" truck driver,

as a network specialist for the State of Texas, and, finally, as a supervisor at a computer factory (Tr.

75, 692).  He ceased working when that factory closed in 2002 (Tr. 126).  Plaintiff has lived with

his mother since his residence was destroyed in a fire (Tr. 141, 240).  At the time of the hearing,

Plaintiff was receiving $500 per month in disability payments from the Department of Veterans

Affairs ("VA") (Tr. 691).

### A.    Plaintiff's Medical Complaints and Treatment History

According to Plaintiff, the medical problems giving rise to his disability began in 2004, when

he was hospitalized for gallbladder pancreatitis and experienced a stroke during surgery to remove

his gallbladder (Tr. 693-94).  Plaintiff testified he had a seizure following his stroke and has

experienced migraine headaches and amnestic spells since that time (*id.*).  His treatment notes for

that period of time confirm Plaintiff sought treatment for abdominal pain and his gallbladder was

surgically removed (Tr. 192, 195).  The treatment notes do not show Plaintiff had a stroke, but state

only that the surgery was "complicated by uncontrolled hypertension" which was treated with

medicine (Tr. 194-96).  Later treatment notes show that Plaintiff was admitted to the hospital in

March, 2004, and October, 2005, because of seizure-related complaints (Tr. 197). He was diagnosed with seizure disorder caused by leukoencephalopathy, which was secondary to malignant hypertension (Tr. 186, 197, 228). Plaintiff's treatment notes show his hypertension is "difficult to control" (Tr. 546), but he was advised his hypertension would be easier to control if he would manage his blood glucose better (Tr. 554). Plaintiff has "poorly controlled" type 2 diabetes, but he has not been diagnosed with complications to diabetes such as retinopathy (Tr. 225). Plaintiff's physicians have noted on several occasions that Plaintiff does not manage his diabetes properly (*e.g.*, Tr. 176, 554).

Plaintiff described experiencing convulsive seizures (Tr. 304, 694), and Plaintiff experienced one seizure in 2004 which was observed by a neurologist while he was hypertensive (Tr. 188). Plaintiff reported to a neurologist in November, 2006, that he had experienced only one seizure in his life[1] (Tr. 217). Plaintiff complained more often of non-convulsive "spells" (e.g., Tr. 252, 304). Plaintiff stated he "d[id not] even know whether to call them seizures or not." (*id.*), but instead characterized his spells as periods of amnesia (*id.*), during which he is functional but loses memory (Tr. 303). On one occasion, Plaintiff described having "one big one" as a result of which he claimed he lost memory of everything he had learned during the preceding semester of school (Tr. 227). Plaintiff stated those periods last anywhere from minutes to days (Tr. 303). At the hearing, Plaintiff stated he has amnestic spells two to three times per week, each lasting about one hour (Tr. 695). Eight months prior to the hearing, in May, 2007, Plaintiff stated he was having blackout spells "about once a month." (Tr. 617). Plaintiff complained at one point he did not respond to stimuli

---

[1] The neurologist's report actually states "Pt currently [sic] states he has only has [sic] one seizure in his like [sic]." (Tr. 217).

4

when having a spell (Tr. 304), but stated on other occasions that external stimuli could "wak[e]" him (Tr. 250, 701). Plaintiff received a CT scan and MRI of his head in October, 2005, but the results were "essentially unremarkable" (Tr. 173).

Plaintiff was attending classes in an Associate's Degree program in Electronics Engineering at the time his alleged disability began in February 2006 (Tr. 691). Around that time, Plaintiff was undergoing monitoring for an epilepsy study, during which he experienced three of his amnestic spells (Tr. 211). The doctors concluded the spells were not epileptic (*id.*), but that they were instead associated with periods during which Plaintiff's heart ceased beating for up to 13 seconds (Tr. 211). Consequently, Plaintiff was given a pacemaker, and he reported feeling better afterward (Tr. 130, 240). Despite this report of improvement in February, 2006, Plaintiff testified he experienced a four-day loss of memory around that same time, which prompted him to withdraw from school for medical reasons (Tr. 695-96). He reports his blood pressure went "through the floor" and he awoke in the hospital after being discovered by his mother (*id.*). Plaintiff reported on another occasion that his losses of memory were correlated to changes in his blood pressure (Tr. 547).

Plaintiff also complained of headaches, sometimes associated with his amnestic spells (*e.g.*, Tr. 247), and he was diagnosed with migraines based on his description of the headaches (Tr. 228). Plaintiff's physicians expressed doubt as to whether his reported "seizures" were epileptic seizures or merely "confusional migraines" (Tr. 252, 304-05). Plaintiff stated his physicians have been unable to help him with his migraine pain despite trying different combinations of medications (Tr. 697), but he also reported his headaches had improved with a medication called topiramate (Tr. 623). Plaintiff testified at the hearing he has migraines three to four times per week (Tr. 695-96). Plaintiff was advised to avoid caffeine and smoking to alleviate his headaches, (Tr. 231), but he

continued to smoke one pack per day (Tr. 529, 616).

Plaintiff also sought treatment for various other conditions. He has been hospitalized twice for renal failure with altered mental status (Tr. 429, 509). These complaints were believed to be secondary symptoms, attributed to "volume depletion" (presumably related to Plaintiff's complaint that he had no thirst urge), hypertension, and hyperglycemia (Tr. 535, 547). He has been diagnosed with depression (Tr. 144), and he sees a psychiatrist regularly (Tr. 617). In addition, Plaintiff reported he had two arthroscopic surgeries on his right knee, but a physical examination showed he retained full range of motion in all joints (Tr. 127, 129). Finally, Plaintiff sought treatment for "foot drop," but his neurologist opined that his examination was not consistent with a nerve injury and that his complaint likely had a "large psychogenic component." (Tr. 610).

Plaintiff described how his medical complaints affect his ability to perform daily activities. In his application for benefits, Plaintiff stated he is limited in his ability to lift his left arm due to his pacemaker, cannot work with electronics or machinery due to seizures, and cannot exert himself (Tr. 82, 86). He testified he could not work near computers because of a risk that his pacemaker would malfunction (Tr. 698-99). He told his doctor in January, 2006, that his seizures moderately affected his ability to do chores and significantly affected his ability to go shopping because of dizziness (Tr. 247). Plaintiff stated his seizures had little effect on his ability to care for his personal needs, but that he needed to be careful not to have a blackout while showering (*id.*). He also stated he could not exercise or play sports, and his seizures and memory problems significantly affected his schooling (*id.*). In March, 2007, however, Plaintiff reported he was "starting to exercise more in warm weather." (Tr. 626). In April, 2007, Plaintiff attended a psychiatric appointment and reported he could not cut the grass unsupervised because he might "black out" and "just drive on down the

6

road" on the riding mower (Tr. 624). At that same appointment, Plaintiff reported he no longer drove a vehicle, but when asked about how he arrived at his appointment, he admitted he had in fact driven (Tr. 625). One month later, Plaintiff told his neurologist he had not driven in six months (Tr. 621). At the hearing, Plaintiff stated he drives when he absolutely has to, but never alone (Tr. 701). Finally, Plaintiff stated he could not currently work or finish school because he would likely miss three days per week and his medications make him drowsy (Tr. 699-700).

Plaintiff also described his understanding of his physicians' opinions. According to Plaintiff, his cardiologist thought his problems were neurological, and his neurologist thought they were cardiological (Tr. 697). Plaintiff also expressed anger at his neurologist, whom Plaintiff understood to believe that Plaintiff's "blackouts" were "in [his] head," that his mind was "playing tricks on [him]," and that his only medical problems were with his heart and his diabetes (Tr. 600).

### B. Medical Opinions

#### 1. Physical Impairments

In May, 2006, Edward Johnson, M.D., performed a consultative physical examination for the state agency (Tr. 126-31). He noted Plaintiff ambulated with a normal gait and was able to get on and off of the exam table independently. Dr. Johnson reported "essentially no abnormal physical findings during th[e] evaluation." (Tr. 130). He noted Plaintiff reported his spells of memory loss had decreased since his pacemaker was inserted. Based on his examination of Plaintiff, Dr. Johnson opined Plaintiff could lift and carry 20 to 30 pounds occasionally and 15 to 20 pounds frequently, and could stand or walk up to 6 hours in a work day (Tr. 130-31). He also opined Plaintiff should avoid hazards such as heights, balancing, machinery, or driving (Tr. 131).

In June, 2006, Robert Doster, M.D., reviewed Plaintiff's medical files and concluded

Plaintiff could lift 50 pounds occasionally and 25 pounds frequently and could stand or walk for 6 hours in a work day (Tr. 134). Dr. Doster agreed that Plaintiff should avoid workplace hazards (Tr. 137). Dr. Doster noted Plaintiff's hypertension was controllable with medication and his alleged seizures were not typical of seizure activity, hypothesizing they may have been "pseudoseizures" (Tr. 140). Dr. Doster specifically declined to assess Plaintiff's credibility because Plaintiff did not provide the forms necessary to do so (*id.*).

In March, 2007, Denise Bell, M.D., reviewed Plaintiff's medical files and made a Residual Functional Capacity ("RFC") assessment (Tr. 316-22). She opined he could lift or carry 20 pounds occasionally and 10 pounds frequently, and that he suffered no other functional limitations except that he should avoid all exposure to hazards (*id.*). Dr. Bell opined Plaintiff's complaints of pain were credible (Tr. 322).

## 2. Psychological Impairments

While Plaintiff's treating sources did not offer opinions as to the degree Plaintiff's impairments limit his functional abilities, the treatment notes do contain five Global Assessment of Functioning ("GAF") scores assigned to Plaintiff based on tests administered between February and November, 2006. In February, 2006, Plaintiff was assigned a GAF score of 50, but his results improved steadily through November, 2006, when he was assigned a GAF score of 70[2] (Tr. 174). In addition, Plaintiff's treating neurologist opined that his "amnestic episodes" might not be the result of a "real neurologic injury," and might be best addressed by psychological or behavioral

---

[2] A GAF score between 41 and 50 corresponds to a "serious" psychological impairment; a score between 51 and 60 corresponds to a "moderate" impairment; and a score between 61 and 70 corresponds to a "mild" impairment. *See Nowlen v. Comm'r of Soc. Sec.*, 277 F. Supp 2d 718, 726 (E.D. Mich. 2003).

therapy (Tr. 611).

In July, 2006, Stephen Hardison, M.A., performed a consultative pscychological examination for the state agency (Tr. 141-45). Mr. Hardison diagnosed Plaintiff with depressive disorder but opined that Plaintiff had no significant limitations with respect to following basic or detailed instructions, social interaction skills, ability to respond appropriately to work situations, or awareness of and precautions regarding normal hazards (Tr. 144-45). Mr. Hardison rated Plaintiff's intellectual skills in the average to high average range, and noted he appeared able to set realistic goals and make plans independently (Tr. 145). That same month, a consultant for the state agency, Rebecca Joslin, Ed.D., concluded from a review of Plaintiff's mental health records that Plaintiff had no more than mild functional impairments (Tr. 156). Similarly, in April, 2007, a psychologist for the state agency reviewed Plaintiff's file and opined that Plaintiff had no more than mild functional limitations from his mental impairments, and opined that Plaintiff's complaints were only "partially credible" (Tr. 333, 335).

### 3. Dr. Hardison's Summation of Plaintiff's Daily Activities

In his July, 2006, report, Mr. Hardison also provided a summary, based on his interview of Plaintiff, describing Plaintiff's daily activities (Tr. 143). That summary, which is of some significance in this matter, stated that Plaintiff would routinely go to bed around 10:00 p.m., waking between 7:00 and 8:00 a.m. (*id.*). Plaintiff would spend much of his time working in the garden, making flowerbeds, tilling, and planting (*id.*). Plaintiff would also perform home maintenance, including plumbing and electrical work (*id.*). In the balance of his time, Plaintiff would use the internet to do research, to try and stay current on his math skills, and to email friends (*id.*). He would also cook occasionally, watch television, and care for his dog (*id.*). Plaintiff would drive

when necessary, going to buy groceries or other items occasionally (*id.*). Perhaps one day per week, according to Plaintiff, he would not feel motivated to get out of bed (*id.*).

## C. ALJ's Findings

Of the medical opinions described above, the ALJ gave "considerable weight" to the conclusions of Dr. Johnson regarding Plaintiff's physical functional abilities (Tr. 27). With respect to Plaintiff's psychological condition, the ALJ gave "great weight" to the "consensus" of opinions of Dr. Hardison, the VA nurse practitioner who assessed Plaintiff's GAF, and the various other mental health sources that Plaintiff's psychological impairment is no more than mild in degree (*id.*).

At step one of the sequential analysis, the ALJ noted Plaintiff had not been working since his alleged disability began (Tr. 19). At step two, the ALJ found several severe impairments: coronary artery disease with associated malignant essential hypertension, peripheral vascular disease and migraine headaches (post pacemaker-insertion), gallstone pancreatitis (post-cholescystectomy), gastroesophageal reflux disease, mixed hyperlipidemia, Type II diabetes mellitus, possible seizure disorder, depression, and degenerative joint disease of the right knee (post-surgery) (*id.*). At step three, the ALJ found that these impairments did not meet or equal a listed impairment (Tr. 20-22). The ALJ then determined Plaintiff's RFC would allow light work (skilled or unskilled), with the additional limitation of avoiding workplace hazards (Tr. 22-27). At step four, the ALJ found that Plaintiff could perform his past relevant work as a computer production supervisor, but could not

10

perform any of his other past relevant work (Tr. 27-28). Despite this finding,[3] the ALJ went on to find at step five that there were other jobs existing in significant numbers that Plaintiff could perform (Tr. 28-29).

## IV.    ANALYSIS

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court

---

[3] The ALJ's finding that Plaintiff could perform past relevant work should have ended the sequential evaluation process. *See Buxton*, 246 F.3d at 772. The ALJ's finding at step four, however, is equivocal. In the section heading for the relevant portion of his opinion, the ALJ stated Plaintiff could *not* perform any past relevant work (Tr. 27), although he stated in the body of the opinion that Plaintiff *could* perform such work (Tr. 28). The Court interprets the ALJ's findings as alternative grounds for the conclusion Plaintiff was not disabled--i.e., "even if" Plaintiff could not perform any past relevant work, there were other jobs he was capable of performing. Either of these alternative grounds is equally susceptible to Plaintiff's challenge, which attacks the ALJ's assessment of his RFC, because the ALJ's findings at both steps four and five rest on that assessment.

11

may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, 2009 WL 2579620, *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived). Nonetheless, the court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not consider any evidence which was not before the ALJ for purposes of substantial evidence review, but new and material evidence can justify a remand of the case to the Commissioner if there is "good cause" for failing to present it earlier. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

**B.      Substantial Evidence Review**

The crux of Plaintiff's challenge is that the ALJ erred in his assessment that Plaintiff retained the RFC to perform full-time, light work, so long as he avoided workplace hazards [Doc. 12]. Plaintiff argues the ALJ erred by relying on Dr. Hardison's summary of Plaintiff's daily activities rather than ascertaining, from Plaintiff's subjective complaints, treatment records, or from further

12

investigation, whether Dr. Hardison's summary was actually reflective of Plaintiff's abilities [Doc. 12 at 5-8].

### 1.    The ALJ's Reliance on a "Summation" of Plaintiff's Daily Activities

Plaintiff argues first that the summation of Plaintiff's daily activities contained in Dr. Hardison's report does not constitute substantial evidence supporting the ALJ's RFC determination. The ALJ cited Dr. Hardison's summary at least three times. First, discussing whether Plaintiff's seizure condition was severe enough to meet a listed impairment, the ALJ noted that Plaintiff "manages his personal care, tills and works in the garden, performs maintenance tasks around his home including plumbing and electrical work, does some limited cooking, shops and drives as needed, tends his pet, and spends a lot of time on the Internet." (Tr. 21). Similarly, in evaluating Plaintiff's physical RFC, the ALJ noted Plaintiff was "ab[le] to till, plant, and maintain a garden and to drive and shop as required" (Tr. 22). Again, when assessing the credibility of Plaintiff's subjective complaints, the ALJ stated that Plaintiff's "daily activities include managing his personal care, performing maintenance chores, tilling the soil and planting and tending a garden, cooking, driving and shopping as required, and doing extensive research on the Internet." (Tr. 26).

Plaintiff contends the ALJ "gleaned all information pertaining to Plaintiff's functioning and abilities from a one paragraph summation" rather than considering the record as a whole. Significantly, Plaintiff does not argue that Dr. Hardison incorrectly reported Plaintiff's description of his daily activities, but rather argues that the ALJ took Dr. Hardison's report "out of context." The ALJ's citations, however, appear to be quite faithful to Dr. Hardison's report. According to Plaintiff, the activities Dr. Hardison described, and which the ALJ reprinted almost verbatim, were "typical" of Plaintiff's days, and these activities occupied "[m]ost of the day" (Tr. 143). Plaintiff

reported to Dr. Hardison that he feels unmotivated to engage in such activities only one day per week (*id.*). I **FIND** the ALJ did not mischaracterize Dr. Hardison's summary.

## 2. ALJ's Credibility Assessment

Plaintiff's first argument goes hand in hand with his next--that the ALJ erred in rejecting Plaintiff's subjective complaints. According to Plaintiff, the ALJ's must have taken Dr. Hardison's report out of context because the ALJ's assessment stands in "stark contrast" with Plaintiff's testimony regarding his functioning. The ALJ's written opinion, however, clearly shows the ALJ did not look at Dr. Hardison's report in isolation. The ALJ examined Plaintiff's subjective complaints and the other evidence in the record relating to those complaints over the course of four pages in his opinion (Tr. 23-27), concluding that the objective evidence and the consensus of medical opinions supported an RFC of light work, limited further to avoid workplace hazards (Tr. 27). To the extent that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms" conflicted with that RFC determination, the ALJ found they were not credible (Tr. 26).

An ALJ must consider "the claimant's allegations of his symptoms . . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health and Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). In addition, a physician's opinion as to the claimant's credibility may be considered by the ALJ, but the authority to make credibility determinations rests finally with the ALJ. *Allen v. Comm'r of Soc.*

*Sec.*, 561 F.3d 646, 652 (6th Cir. 2009).

The ALJ is not free, however, to make credibility judgments based solely on intuition, but must find support for his assessment in the record. *Rogers*, 486 F.3d at 247. In this enterprise, any inconsistencies between the claimant's complaints and other record evidence, including evidence of the claimant's daily household and social activities, will tend to support an ALJ's adverse credibility determination. *Id.*; *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (claimant's activities of washing dishes, light cooking, laundry, reading, bathing, traveling to a national park, shopping, spending time with friends, and attending church were inconsistent with her allegations of total disability). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding," and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference).

Here, I **FIND** the ALJ's credibility determination with respect to Plaintiff's subjective complaints was fully explained and not at odds with the medical evidence in the record. The ALJ noted Plaintiff's complaints about his memory lapses and headaches, and noted the absence of objective medical findings substantiating them (Tr. 24, 26). The ALJ stated that Dr. Johnson found "all physical findings within normal limits with the exception of poorly controlled hypertension" and noted Plaintiff's physicians attributed his headaches to his hypertension (*id.*). In this regard, the

15

ALJ also noted a trend of improvement in Plaintiff's blood pressure (Tr. 26). As to Plaintiff's allegations of depression, the ALJ discussed the medical evidence and noted a "consensus" of opinion that Plaintiff's psychological impairments are no more than mild. Along with this discussion of the objective medical evidence, the ALJ also considered Plaintiff's daily activities, as reported by Dr. Hardison, concluding those activities were inconsistent with Plaintiff's allegations, at least "to the extent alleged" (Tr. 26).

Plaintiff points to his "right leg discomfort" due to surgeries and peripheral nerve injuries to argue that any gardening or maintenance chores performed by Plaintiff are trivial. That there may be some evidence in the record tending to substantiate Plaintiff's subjective complaints, however, is largely irrelevant because there is ample evidence supporting the ALJ's conclusion that Plaintiff's complaints were not credible to the degree alleged, and the ALJ's credibility determination merely resolves conflicts in the evidence. *See King v. Heckler*, 742 F.2d at 974-75. Contrary to Plaintiff's argument, the existence of inconsistencies between Plaintiff's description of his daily activities and his subjective complaints does not undermine the ALJ's credibility assessment; it supports that assessment. *See Cruse*, 502 F.3d at 542-43; *Rogers*, 486 F.3d at 247. Thus, giving the ALJ's credibility assessment the "great weight" to which it is entitled, I **CONCLUDE** the ALJ's rejection of Plaintiff's subjective testimony was supported by substantial evidence.

### 3. Whether Plaintiff's Daily Activities Constitute Substantial Evidence of his Ability to Perform Full-Time Work

Plaintiff argues next that even assuming it was not error for the ALJ to rely on Dr. Hardison's report of his daily activities, that summary does not constitute substantial evidence that he could perform light work on a full-time basis. Plaintiff cites *Walston v. Gardner*, 381 F.2d 580, 586-86 (6th Cir. 1967) for the proposition that a claimant's ability to perform chores on an

16

intermittent basis is not substantial evidence of his ability to work on a full-time basis. Plaintiff's

reliance on *Walston* is misplaced for two reasons. First, Plaintiff did not describe his daily activities

as being "intermittent." Plaintiff reported to Dr. Hardison that he engaged in the described activities

"[m]ost of the day," except for approximately one day per week when he felt unmotivated (Tr. 143).

Second, *Walston* is immediately distinguishable because in *Walston*, the claimant's subjective

complaints of intense pain were confirmed by every physician who examined him. *Walston*, 381

F.2d at 586. The court in *Walston* held it was error for the ALJ to conclude, in spite of this

uncontradicted medical evidence, that the claimant's intermittent activities belied his complaints of

pain. *Id.* at 586-87.

In contrast, Plaintiff's subjective complaints were found incredible "in light of, not in spite

of, the objective medical evidence." *Harrington v. Barnhart*, 2008 WL 2774480, at *8 (M.D. Tenn.

2008) (distinguishing *Walston*). *See also Cruse*, 502 F.3d at 542-43 (claimant's daily activities,

alongside medical evidence that the clamant's symptoms were not as severe as she suggested,

supported the ALJ's adverse credibility assessment). With respect to Plaintiff's alleged seizures,

the ALJ noted Plaintiff's tests were "negative for significant abnormalities of the brain" (Tr. 26).

With respect to Plaintiff's light-headedness and headaches, the ALJ observed Plaintiff's physicians

had attributed them to hypertension, and also noted Plaintiff's compliance with his hypertension

medications had been questionable, but had improved (*id.*). And, with respect to Plaintiff's

depression, the ALJ noted Plaintiff's trend of improving GAF scores in 2006 (Tr. 27). *See Laster*

*v. Astrue*, 2009 WL 3152797, at *3 n.1 (E.D. Tenn. Sep. 24, 2009) (stating that "GAF score[s] may

help an ALJ assess mental RFC"). Finally, the ALJ considered the opinions of the examining and

consulting physicians, all of whose opinions were consistent with an RFC of light work, further

limited to avoid workplace hazards (Tr. 26-27). Of particular relevance here, the ALJ noted that the consultative physical examiner, Dr. Johnson, opined Plaintiff could stand or walk up to six hours out of an eight hour workday, which is consistent with light work (Tr. 22). Considered along with the medical evidence in this case, I **FIND** Plaintiff's daily activities constitute substantial evidence that his subjective complaints were not entirely credible.

### C.  Failure to Investigate Plaintiff's Daily Activities

Plaintiff also contends that, given the inconsistency between Dr. Hardison's report and Plaintiff's subjective complaints, the ALJ erred by failing to investigate the extent of the limitations on Plaintiff's daily activities. Plaintiff does not develop this argument with any citation to authority, and the Court notes it could be deemed waived. *See McPherson*, 125 F.3d at 995-96. More importantly, however, Plaintiff's argument ignores that he bears the burden of proof to establish the extent of his impairments. *See Jones*, 336 F.3d at 474. As Defendant notes, Plaintiff was represented by counsel at the hearing and had the opportunity to present evidence of impairments in his daily activities. Furthermore, having already concluded the evidence of Plaintiff's daily activities in the record is "substantial," it would be anomalous to conclude the ALJ should have, on his own initiative, taken more evidence on that subject. Thus, I **FIND** the ALJ did not err by failing to investigate Plaintiff's daily activities further.

### D.  Failure to Explain the RFC Determination

Plaintiff also argues that the ALJ's reliance on Dr. Hardison's report was error because the ALJ failed to explain why the summary of daily activities supported a conclusion Plaintiff could perform full-time work. Here too, Plaintiff has failed to cite any authority, and the Court could deem the argument waived. *See McPherson*, 125 F.3d at 995-96. As explained above, however, the ALJ

18

did state his rationale: he explained that Plaintiff's daily activities, considered along with the objective medical evidence, were inconsistent with his subjective complaints and concluded that Plaintiff's subjective complaints were therefore not credible (Tr. 22-27). Furthermore, Plaintiff's argument is without legal merit. Some of the SSA's regulations require the ALJ to make specific findings. *E.g.*, 20 C.F.R. §§ 404.1520a(e)(2) (regarding the degree to which a mental impairment affects several "functional areas"); 416.927(d)(2) ("good reason[]" requirement for discounting a treating physician's opinion). Plaintiff has identified no analogous requirement that the ALJ make specific findings with respect to the RFC determination, however, and I **FIND** the ALJ's opinion is adequate evaluate whether his findings were supported by substantial evidence.

### E.    Sentence Six Remand

Plaintiff argues in the alternative that new evidence supports a remand to the Commissioner for further consideration [Doc. 12 at 3-5]. Plaintiff offers as new evidence a recent determination by the VA that he is entitled to a "significant increase" in VA disability benefits because of "mood disorder with major depression (secondary to seizures)" [Doc. 12-1]. The VA decision was issued on November 19, 2008 [*id.*], five months after the ALJ's decision denying benefits (Tr. 14).

Evidence submitted to the Court after the close of administrative proceedings cannot be considered for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Pursuant to sentence six of 42 U.S.C. § 402(g), however, the Court may remand a case for further administrative proceedings "if the claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Evidence is "new" when it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster*, 279 F.3d at 357 (internal

quotes omitted). Evidence is "material" when "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* And, a claimant shows "good cause" when she can demonstrate a "reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* The burden of proof is on the claimant to show that a remand is appropriate. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009).

The VA's summary of the medical evidence used to make its decision consists, in large part, of the same medical evidence considered by the ALJ [Doc. 12-1 at 7-8]. For example, the summary describes Plaintiff's complaints of memory lapses, seizures, and history of gallstone pancreatitis [*id.*]. To the extent that the VA's decision rests on the same information that was before the ALJ, it cannot justify a remand because it is not material. The VA employs lower standards to establish disability than the SSA, *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006), and the SSA is in no way bound by VA determinations. 20 C.F.R. § 404.904. Thus, I **FIND** the VA's evaluation of medical evidence already considered by the ALJ is not material because it does not create a reasonable likelihood that the ALJ would have made a different decision under the SSA definition of disability.

It appears, however, that the VA's decision was not based solely on medical records already considered by the ALJ.[4] Nonetheless, I also **FIND** the VA's evaluation, insofar as it rested on information not available to the ALJ, is not material. Again, the VA's lower standard for disability

---

[4] For example, the decision letter states Plaintiff received a GAF score of 56 on June 26, 2008, after the ALJ issued his decision of June 9, 2008 [Doc. 12-1 at 7]. In addition, the VA considered medical records from the Chattanooga and Tullahoma Community Based Outpatient Clinics dated December, 2003, to November 5, 2008. [Doc. 12-1 at 6].

makes it an improper lens through which to view the medical evidence. If there is any new and material evidence, it must be the underlying medical records themselves, not the VA's evaluation of those records, and no new medical records have not been submitted by Plaintiff to the Court. *See Allen*, 561 F.3d at 653 ("a subsequent favorable decision may be *supported by* evidence that is new and material . . . , but the decision is not itself new and material evidence.").

Even if the medical records had been submitted, however, they would not likely meet the prerequisites for remand. With respect to any medical records arising prior to the ALJ's decision, it is unlikely Plaintiff could show good cause for not submitting them during the administrative proceedings. *See Oliver v. Sec'y of Health and Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (noting that "in order to show good cause the complainant must give a valid reason for his failure to obtain evidence prior to the hearing."). And, with respect to the medical records arising after the ALJ's decision, such records are immaterial to the ALJ's determination that Plaintiff was not disabled "from February 3, 2006, through the date of [his] decision," June 9, 2008. *See Jones*, 336 F.3d at 478; *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 ("Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial."). If Plaintiff's condition deteriorated after the ALJ's decision was issued, his proper recourse is not to seek remand, but to file a new disability claim. Thus, I **CONCLUDE** Plaintiff is not entitled to a remand under sentence six of 42 U.S.C. § 402(g).

## V.     CONCLUSION

Having carefully reviewed the administrative record and the parties' pleadings, I

**RECOMMEND:**[5]

    (1)     Plaintiff's motion for judgment on the pleadings [Doc. 11] be **DENIED**.

    (2)     Defendant's motion for summary judgment [Doc. 15] be **GRANTED**.

    (3)     The Commissioner's decision denying benefits be **AFFIRMED** and this
        action be **DISMISSED WITH PREJUDICE**.


s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

22